## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TYRONE LEWIS-BEY,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 21-CV-1578** |
| | : | |
| **SMART,** *et al.*, | : | |
| **Defendants.** | : | |

### MEMORANDUM

**SLOMSKY, J.**                                                   **SEPTEMBER  1  , 2021**

Currently before the Court is a Request to Proceed Following Dismissal and an Amended Complaint filed by Plaintiff Tyrone Lewis-Bey.  (*See* ECF Nos. 9, 10.)  For the following reasons, the Court will construe Lewis-Bey's request as a post-judgment motion to amend the complaint and deny the motion because the Amended Complaint fails to plead a plausible claim.

## I.      FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

Lewis-Bey's original Complaint raised claims related to a stop that occurred while he was riding his bicycle.  (*See* ECF No. 2 at 1-2.)[1]  Lewis-Bey alleged that he was harassed by the police and that he was searched and arrested, but not given a ticket.  (*Id.* at 1.)[2]  He identified the arresting officer as Officer Smart, who was accompanied by his partner, Officer Sarpong.  (*Id.* at 2.)

---

[1] The Court adopts that pagination supplied by the CM/ECF docketing system.

[2] Lewis-Bey alleged that in May 2019, a police officer "was coming fast and close to my back bike tire."  (ECF No. 2 at 1.)  He "decided to move," and turned onto a street travelling against traffic "to get onto the sidewalk . . . to let the officer pass by."  (*Id.*)  The officer followed him and "jumped the sidewalk to block [his] movement."  (*Id.*)  When he asked why he was stopped, Lewis-Bey was told that he was "riding a bike without lights, no helmet, against traffic, [and] on [the] sidewalk."  (*Id.*)

In a May 26, 2021 Memorandum and Order, the Court granted Lewis-Bey leave to proceed *in forma pauperis* and dismissed his Complaint upon screening pursuant to 28 U.S.C. § 1915(e)(2)(B).  (*See* ECF Nos. 6, 7.)  Construing the Complaint as alleging claims under 42 U.S.C. § 1983, the Court first concluded that Lewis-Bey's Complaint did not comply with the requirements of Federal Rules of Procedure 8 and 10.  (ECF No. 6 at 3.)  The Complaint did not allege a basis for this Court's jurisdiction, did not present a request for relief, and did not clearly identify the defendants.  (*Id.* at 3-4.)  The Court also determined that the Complaint was conclusory and fell short of providing a sufficient factual basis to state plausible claims.  (*Id.* at 4.)  Lewis-Bey was granted leave to file an amended complaint.  (*See* ECF No. 7.)

Lewis-Bey did not file an amended complaint within the thirty-day time frame imposed by the Court.  Consequently, on July 30, 2021, the Court issued a final dismissal Order and closed the case.  (*See* ECF No. 8.)  The dismissal Order informed Lewis-Bey that if he did not intend to stand on his Complaint, he must "move for reconsideration of this Order in accordance with Federal Rule of Civil Procedure 59(e), and attach his proposed amended complaint to that motion."  (*Id.*)

On August 13, 2021, Lewis-Bey filed a Request to Proceed Following Dismissal, which was followed by an Amended Complaint on August 16, 2021.  (*See* ECF Nos. 9, 10.)  The Amended Complaint alleges that on the morning in question, Lewis-Bey, who is a barber, left a house on the 1500 block of Bambrey Street to travel on Tasker Street to a client's house.  (ECF No. 10 at 1.)[3]  He claims that after making a right turn onto Tasker Street toward 26th Street, a police cruiser that was following him "was getting closer to my back wheel at times, so I got as

---

[3] Although the Amended Complaint does not specify, in the initial Complaint, Lewis-Bey alleged that the events that are the subject of his claims occurred in May 2019.  (*See* ECF No. 2 at 1.)

close to the parked cars as possible considering there is no 'bike lane' on Tasker." (*Id.*) As

Lewis-Bey continued travelling on Tasker Street, the police cruiser slowed and as "I hit 27th and

Tasker, there is a stop sign so I blew the stop sign to put distance between the cruiser and I."

(*Id.*) He further asserts that "[b]etween 27th and 28th Streets there are two small streets, Etting

and Marston Streets." (*Id.* at 1-2.) Lewis-Bey claims as follows:

> Etting St. is the [first] street you would come to, but making a left onto the block
> is against traffic and going right into the other hundred is against traffic also. The
> cruiser was coming and I had to do something quick so I turned left into 1600
> Etting because I was on that side of Tasker, but the move was made so fast that I
> almost hit a step on the corner, so to avoid collision I turned right and ended up
> going toward 28th Street on Tasker sidewalk, I braked and continued down Etting.

(*Id.* at 2.) Officer Smart, who had been following Lewis-Bey in his police cruiser, then "jumped

the curb, cut me off and exited the vehicle talking about riding on a sidewalk against traffic."

(*Id.*) According to Lewis-Bey, he informed Officer Smart that he "was moving for an

emergency vehicle." (*Id.*) Officer Smart searched and inventoried Lewis-Bey's "clipper bag"

and "confiscated the bag because of the razors and tools," apparently after arresting him due to

an outstanding warrant. (*Id.* at 2; *id.* at 4 (indicating that the traffic stop "found a warrant and

caused [Lewis-Bey] to be arrested").)[4]

      Lewis-Bey contends that Officer Smart sought to harass him because a friend of his "had

an incident with Officer Smart." (*Id.* at 3.) He alleges that Officer Smart "had it out for" Lewis-

Bey's friend and Officer Smart "kept seeing me and him together so the harassment transferred

over to me for no reason." (*Id.*) Lewis-Bey asserts that he "is not a drug dealer" but that he cuts

hair on the streets for a living, so he "is bound to be in a lot of suspicious places." (*Id.*) Lewis-

---

[4] Lewis-Bey also contends that he "had to make a big fuss about my bike because if I hadn't, my
bike would've been left on the arrest scene." (ECF No. 10 at 3.)

Bey contends that Officer Smart acted under the pretense of a traffic violation, but that Lewis-Bey never received "the summons." (*Id.*)

Lewis-Bey questions the basis for Officer Smart's stop, asking "did he think I had something illegal in my bag from the Bambrey Street house, arrests have been made at the Bambrey residence but none of the drug possessions or arrests were me, nor was I on scene when the bust happened." (*Id.* at 3-4.) Lewis-Bey avers that Officer Smart did not know that he was a barber, but that Officer Smart "thought I sold drugs." (*Id.* at 4.) Lewis-Bey asserts that he should not have been stopped based on a "feeling." (*Id.*) Lewis-Bey also contends that there was no probable cause for the stop because there was no traffic ticket issued. (*Id.*) According to Lewis-Bey, based on the stop that lacked probable cause, he was "committed to the county jail for two weeks" due to an outstanding arrest warrant. (*Id.*)

Like the original Complaint, the Amended Complaint does not articulate a request for relief. However, Lewis-Bey clarifies that he is not presenting any claims against Officer Sarpong, but seeks to add the City of Philadelphia as a defendant. (*Id.* at 5.)

## II.    STANDARD OF REVIEW

Since final judgment has been entered in this case, the Court will construe Lewis-Bey's Request to Proceed Following Dismissal and his Amended Complaint as a conjoined motion for reconsideration, *see* Fed. R. Civ. P. 59(e), and motion for leave to file an amended complaint, *see* Fed. R. Civ. P. 15(a). *See Lacey v. City of Newark*, 828 F. App'x 146, 150 (3d Cir. 2020) (*per curiam*) ("A post-judgment motion to amend a complaint is properly construed as either a motion pursuant to Rule 59(e) or Rule 60(b) of the Federal Rules of Civil Procedure, depending upon when it was filed." (citing *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 230 (3d Cir. 2011))). "When a party requests post-judgment amendment of a pleading, a court will normally conjoin the Rule 60(b) [or Rule 59(e)] and Rule 15(a) motions to decide them simultaneously, as it

4

would be a needless formality for the court to grant the motion to reopen the judgment only to deny the motion for leave to amend." *Ahmed v. Dragovich*, 297 F.3d 201, 209 (3d Cir. 2002) (internal quotations omitted). "Therefore, the fact that the amended pleading offered by the movant will not cure the defects in the original pleading that resulted in the judgment of dismissal may be a valid reason both for denying [amendment and reconsideration]." *Id.* (internal quotations omitted); *see also Jang v. Boston Sci. Scimed, Inc.*, 729 F.3d 357, 368 (3d Cir. 2013) ("We have held that '[w]here a timely motion to amend judgment is filed under Rule 59(e), the Rule 15 and 59 inquiries turn on the same factors.'") (quoting *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 272 (3d Cir. 2001)).

Here, the relevant inquiry is whether Lewis-Bey's Amended Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice to state a claim. *Id.*

## III.   DISCUSSION

The vehicle by which federal constitutional claims may be brought in federal court is Section 1983 of Title 42 of the United States Code, which provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S.

42, 48 (1988).  The Court understands the Amended Complaint as presenting Fourth Amendment claims stemming from the stop and subsequent arrest.

### A.        Failure to Allege a Fourth Amendment Violation

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  "Generally, for a seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based on probable cause."  *United States v. Lewis*, 672 F.3d 232, 237 (3d Cir. 2012) (quoting *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002)).  It is well-settled that the temporary detention of an individual during a traffic stop is a "seizure" of "persons" under the Fourth Amendment.  *Whren v. United States*, 517 U.S. 806, 809-10 (1996). To conduct a traffic stop, however, an officer need only have reasonable suspicion "that criminal activity is afoot."  *Lewis*, 672 F.3d at 237.  Moreover, where police have directly witnessed a traffic violation, a traffic stop is a reasonable seizure under the Fourth Amendment.  *See United States v. Moorefield*, 111 F.3d 10, 12 (3d Cir. 1997) ("[A] traffic stop is lawful under the Fourth Amendment where a police officer observes a violation of the state traffic regulations."). Further, an officer's subjective reason for making a traffic stop plays no role in the reasonable suspicion analysis.  *See Whren*, 517 U.S. at 812-13; *United States v. Yusuf*, 993 F.3d 167, 182 n.12 (3d Cir. 2021).  As the Third Circuit has explained, the Supreme Court established a "bright-line rule that any technical violation of a traffic code legitimizes a stop, even if the stop is merely pretext for the investigation of some other crime."  *United States v. Mosley*, 454 F.3d 249, 252 (3d Cir. 2006) (citing *Whren*, 517 U.S. 806); *see also United States v. Wilson*, 960 F.3d 136, 145 (3d Cir. 2020) (a technical violation of a traffic code legitimizes a stop and pretext is "irrelevant" to the analysis), *cert. denied sub nom. Moore v. United States*, 141 S. Ct. 1090 (2021).

Thus, contrary to Lewis-Bey's assertion, Officer Smart's subjective reason for making the stop plays no role in the analysis.  Lewis-Bey acknowledges that he turned left onto Etting Street against traffic.  (ECF No. 10 at 2.)[5]  Because "any technical violation of a traffic code legitimizes a stop," and travelling the wrong way on a one-way road is a violation of 75 Pa. Cons. Stat. § 3308(b), Officer Smart had reasonable suspicion to conduct the traffic stop.[6]  *See, e.g., United States v. Smith*, Crim. A. No. 18-93, 2018 WL 4207152, at *2 (E.D. Pa. Sept. 4, 2018) (traffic stop was lawful under the Fourth Amendment where officer observed defendant riding bicycle the wrong way on a one-way street in violation of 75 Pa. Cons. Stat. § 3308(b)); *Commonwealth v. Ibrahim*, 127 A.3d 819, 824 (Pa. Super. Ct. 2015) (finding that probable cause to stop existed at the moment the officer observed a violation of § 3308(b) of Pennsylvania's Motor Vehicle Code when the defendant drove "his bicycle westbound on a road that requires all traffic to proceed in the eastbound direction").  Consequently, the Amended Complaint does not allege a plausible Fourth Amendment claim based on the initial traffic stop.

To the extent he attempts to do so, Lewis-Bey also has not pled a plausible Fourth Amendment claim based on the arrest that followed the traffic stop.  As the Third Circuit has recognized, "[t]he dividing line between false arrest/imprisonment claims and malicious prosecution claims is the initiation of legal process.  Arrests made pursuant to a 'validly issued – if not validly supported – arrest warrant' generally occur after the institution of legal process and, thus, sound in malicious prosecution rather than false arrest or imprisonment."  *Noviho v. Lancaster Cty. of Pennsylvania*, 683 F. App'x 160, 166 (3d Cir. 2017) (quoting *Myers v.*

---

[5] In the original Complaint, Lewis-Bey asserted that when he asked the officer the reason for the stop, "he said for riding a bike without lights, no helmet, against traffic, on sidewalk."  (*See* ECF No. 2 at 1-2.)

[6] Riders of bicycles generally must comply with the provisions of Pennsylvania's Motor Vehicle Code.  *See* 75 Pa. Cons. Stat. § 3501.

*Koopman*, 738 F.3d 1190, 1195 (10th Cir. 2013)); *see also Johnson v. United States*, 852 F.

App'x 645, 647 (3d Cir. 2021) (*per curiam*) ("[T]he Magistrate Judge correctly concluded that

because Johnson was arrested pursuant to a warrant, his claims for false arrest and false

imprisonment were, in essence, malicious prosecution claims.").  According to Lewis-Bey, after

he was stopped by Officer Smart, he was arrested on a warrant that had been issued for a

probation violation.[7]  (*See* ECF No. 10 at 4.)  Thus, to the extent that Lewis-Bey presents a claim

based on the May 2019 arrest, the Court construes this claim as a malicious prosecution claim.

"To prevail on a malicious prosecution claim under section 1983, a plaintiff must show that: (1)

the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the

plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants

acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff

suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal

proceeding."  *McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009).

   This claim is not cognizable in a civil rights action at this time, however, because Lewis-

Bey has not alleged that the criminal proceedings have terminated in his favor.  *See Heck v.*

*Humphrey*, 512 U.S. 477, 486-87 (1994) ("[T]o recover damages [or other relief] for allegedly

unconstitutional conviction or imprisonment, or for other harm caused by actions whose

unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that

the conviction or sentence has been reversed on direct appeal, expunged by executive order,

declared invalid by a state tribunal authorized to make such determination, or called into

question by a federal court's issuance of a writ of habeas corpus[.]"); *McBride v. O'Brien*, 646 F.

App'x 277, 278 (3d Cir. 2016) (*per curiam*) ("The *Heck* doctrine applies to probation

---

[7] In the original Complaint, Lewis-Bey indicated that he was arrested for a probation violation.
(*See* ECF No. 2 at 2.)

revocations decisions.") (citing *Williams v. Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006)); *see also Nash v. Kenney*, 784 F. App'x 54, 57 (3d Cir. 2019) (*per curiam*) ("Nash's malicious-prosecution . . . [claim is] barred by the favorable-termination rule of [*Heck*]."); *Floyd v. Attorney Gen. of Pennsylvania*, 722 F. App'x 112, 114 (3d Cir. 2018) (*per curiam*) ("Because Floyd's malicious prosecution and fabrication of evidence claims do not accrue until the criminal proceedings have terminated in Floyd's favor, and Floyd has not demonstrated as much, they are barred by *Heck*."); *Brown v. City of Philadelphia*, 339 F. App'x 143, 146 n.2 (3d Cir. 2009) ("Because Brown alleges that his detention is pursuant to a warrant, his claim likely is in the nature of a claim for malicious prosecution (rather than false arrest or false imprisonment), which must await the termination of proceedings in his favor.").  In the event the criminal proceedings are resolved in his favor, Lewis-Bey may file a new case raising this claim.[8]

### B. Failure to Allege a Basis for Municipal Liability against the City of Philadelphia

Lewis-Bey also indicates that he seeks to add the City of Philadelphia as a named Defendant.  (*See id.* at 5.)  To state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation.  *See Monell v. Dept. of Soc. Servs. of New York City*, 436 U.S. 658, 694 (1978); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003).  "To satisfy the pleading standard, [the plaintiff] must . . .

---

[8] The Court notes with regard to the search of Lewis-Bey's "clipper bag" pursuant to his arrest that "when a valid arrest has been made in a public place, which requires that the arrested person be transported from the scene, police may search any luggage that the person has in his possession at the time of the arrest, and which must accompany him to the police station, prior to transporting it.  As with the inventory search exception, searches of this type are justified by concerns for officer safety and will be valid whether or not an officer has probable cause to believe the evidence contains contraband."  *United States v. Matthews*, 532 F. App'x 211, 224 (3d Cir. 2013); *see also United States v. Curran*, Crim. A. No. 13-259, 2014 WL 2042138, at *3-4 (M.D. Pa. May 19, 2014) (cursory search through defendant's bags at scene of arrest to ensure officer safety was lawful because bags had to be transported to police station), *aff'd*, 638 F. App'x 149 (3d Cir. 2016).

specify what exactly that custom or policy was." *McTernan v. City of York, Pennsylvania*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). For a custom to be the proximate cause of an injury, the municipality must have "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and . . . its failure, at least in part, led to [plaintiff's] injury." *Id.* (internal quotations and alterations omitted). Nothing in the Amended Complaint alleges that the conduct of which Lewis-Bey complains was the result of a municipal policy or custom. As a result, Lewis-Bey has failed to plead a plausible claim of municipal liability against the City of Philadelphia.

## IV.    CONCLUSION

Lewis-Bey has not provided a basis for reconsideration. The Amended Complaint does not allege facts from which the Court could plausibly infer that Officer Smart, or the City of Philadelphia, violated his Fourth Amendment rights. Thus, it would be futile to allow Lewis-Bey to amend based on the allegations of his Amended Complaint. Accordingly, the Court will not reopen its judgment in this case. An appropriate Order follows.

**BY THE COURT:**

/s/Joel H. Slomsky, J.
_____
**JOEL H. SLOMSKY, J.**